IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **AARON E. YOUNG,** | CASE NO. 3:18 CV 2807 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **DEAN MULVAINE, et al.,** | |
| Defendants. | MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

On October 22, 2018, Plaintiff filed an initial complaint against Management and Training Corporation ("MTC") and current and former employees of MTC in the Court of Common Pleas of Marion County. (Doc. 1-1, at 1). Defendants removed the case to this Court on December 5, 2018. (Doc. 1). Plaintiff subsequently filed an amended complaint. *See* Doc. 36. Plaintiff brings claims for damages under 42 U.S.C. § 1983, alleging: "(1) retaliation in violation of the First Amendment of the United States Constitution, (2) interference with counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution, (3) unequal treatment and confiscation of property in violation of the Fourteenth Amendment of the United States Constitution, and (4) excessive force in violation of the Eighth Amendment of the United States Constitution." (Doc. 36, at 1-2). Plaintiff also brings state law claims of negligence and false light. *Id*. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Currently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 72), to which Plaintiff filed an amended opposition (Doc. 87-1) and Defendants replied (Doc. 88). Plaintiff also filed a

Motion for Telephone Status Conference (Doc. 69). For the reasons stated below, Defendants' motion is granted and Plaintiff's motion is denied.

## BACKGROUND

At all relevant times, Plaintiff was an inmate at the North Central Correctional Complex ("NCCC"), a private facility managed by Defendant MTC. (Doc. 38, at 1). While incarcerated at NCCC, Plaintiff filed several unrelated lawsuits against MTC. (Doc. 71-1, at 11). Throughout August and September 2017, officers repeatedly blocked Plaintiff's access to his attorney for these cases or monitored their calls. *Id*. at 18-20. However, Plaintiff admits he never missed a case deadline because of these hinderances nor was he prevented from filing any lawsuit. *Id*. at 25. Plaintiff was still able to communicate with his attorney via mail. *Id*. at 23. Plaintiff never filed any form of complaint with the prison regarding these allegations. (Doc. 72-1, at 2).

On two occasions in October 2017, Plaintiff had legal materials taken from his cell. The first instance was on October 12, 2017 ("October 12 complaint"). (Doc. 71-1, at 29). Plaintiff believed Defendant Officer Brandi Smith confiscated the documents, but he did not see her do so. *Id*. at 31. The second instance occurred on October 26, 2017 ("October 26 complaint"). *Id*. Again, Plaintiff did not see who took the documents. *Id*. However, another inmate saw Defendant Smith search Plaintiff's cell outside of his presence, fold up a piece of paper from inside the cell, and place it in her pocket. *Id*. at 33. Plaintiff was still able to meet all court deadlines despite the confiscations. *Id*. Plaintiff filed informal complaints with the prison regarding both incidents. (Doc. 72-1, at 3).

After the October 12 informal complaint was dismissed, Plaintiff elevated the complaint to a grievance. *Id*. at 12. Defendant Shuler informed Plaintiff that after further investigation, it was found there was "no violation of any rule, law or policy in this grievance, so therefore this

grievance is being denied and this office will take no further action." *Id*. at 13. Plaintiff then elevated the decision to an appeal, and the decision was affirmed. *Id*. at 13-14.

After the October 26 informal complaint was dismissed, Plaintiff elevated the complaint to a grievance. *Id*. at 10. Once again, Defendant Shuler informed Plaintiff "[t]here [was] no documentation to prove that the officer took your legal documents and kept them" and denied the grievance. *Id*. Plaintiff did not appeal this decision. *Id*. at 3.

On November 17, 2017, NCCC staff received an anonymous letter threatening the safety of Defendant Smith. *See* Doc. 72-3, at 4. Sergeant Dean Mulvaine considered Plaintiff a "possible person of interest" and placed Plaintiff in restrictive housing pending an investigation. *Id*. After investigation, the Rules Infraction Board held a hearing and subsequently found Plaintiff guilty of writing the letter. *Id*. at 5. Because of Plaintiff's disciplinary history, reviewing officer Cynthia Miller recommended Plaintiff's security level be increased. (Doc. 72-2, at 55). The Ohio Department of Rehabilitation and Correction's Bureau of Classification affirmed this recommendation. (Doc. 72-4, at 2).

After the disciplinary hearing, Mulvaine and Lieutenant Benjamin Blankenship escorted Plaintiff back to his cell. (Doc. 71-1, at 47). While returning to his cell, Mulvaine pushed Plaintiff against a wall, made several threatening remarks and slurs, and punched Plaintiff in the face. *Id*. at 49-50. Plaintiff told Defendant Officer Lorri Shuler about the incident, but again, Plaintiff did not file an informal complaint about the incident. *Id*. at 50-51.

Plaintiff began his disciplinary segregation on November 17, 2017. *Id.* at 47. Plaintiff asserts that while his security level was increased, he was unable to use the "JPay" machine to file informal complaints. (Doc. 71-1, at 53-56). When Plaintiff requested paper forms instead, his requests went ignored. *Id*. On December 7, 2017, Sergeant Steve Jones granted Plaintiff's

3

request to use a JPay machine to file an informal complaint. (Doc. 72-2, at 29). After conducting a security check a short time later, Jones discovered Plaintiff looking at personal pictures. *Id.* at 29. Jones informed Plaintiff he was not allowed to view these pictures because Plaintiff was sentenced to restrictive housing. (Doc. 87-2, at 4). After Plaintiff told Jones there was no such rule, Jones began to call Plaintiff a child molester in front of other inmates. (Doc. 71-1, at 51-52). Once again, Plaintiff did not file a complaint regarding the incident. (Doc. 72-1, at 3).

## STANDARD OF REVIEW

Summary judgment is appropriate when the evidence shows there is "no genuine dispute as to material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must consider all underlying facts "in the light most favorable to the party opposing the motion." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 457 U.S. 574, 587 (1986). The Court cannot weigh the evidence or determine the truth of the disputed matter and must determine only whether there is a genuine issue for trial. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). The moving party bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, this burden may be discharged if the moving party can show "there is an absence of evidence to support the nonmoving party's case." *Id*. Once this is shown, the nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324

## DISCUSSION

Plaintiff brings claims of retaliation, interference with counsel, unequal treatment and confiscation of property, excessive force and failure to intervene, negligent hiring, training, and supervision, and false light. (Doc. 36, at 1-2). In response, Defendants claim they are entitled to

4

summary judgment as Plaintiff failed to exhaust all administrative remedies as required by the Prison Litigation Reform Act ("PLRA") or, alternatively, that Plaintiff's claims are without merit. *See generally* Doc. 72. Each point will be discussed in turn.

Failure to Exhaust Administrative Remedies

Defendants argue Plaintiff failed to exhaust his administrative remedies as required by the PLRA, warranting dismissal. (Doc. 72, at 9).

An inmate must exhaust all available administrative remedies before bringing an action under 42 U.S.C. § 1983. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001); PLRA, 42 U.S.C. § 1997e(a). Proper exhaustion of administrative remedies requires "compliance with an agency's deadlines and other critical procedural rules[.]" *Cook v. Caruso*, 531 F. App'x 554, 562 (6th Cir. 2013) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("A prisoner must adhere to the institutional grievance policy . . .").

There is "no question" exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Failure to exhaust is an affirmative defense. *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 687 (6th Cir. 2013) (citing *Bock*, 549 U.S. at 216; *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012)). Therefore, Defendants bear the burden of proof on exhaustion. *Id.* (citing *Surles*, 678 F.3d at 455). Summary judgment will only be granted if Defendants establish

the "absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

However, an exception to this rule applies when administrative remedies are not made available to a prisoner. *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). An administrative remedy is not "available": (1) when officers [are] "unable or consistently unwilling to provide any relief"; (2) when the procedure is "so opaque" that it is "incapable of use"; or (3) when officers "thwart inmates from taking advantage of a grievance process." *Ratliff v. Graves*, 761 F. App'x 565, 567 (6th Cir. 2019) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). If a remedy is deemed unavailable, an exhaustion defense is defeated. *Does 8-10*, 945 F.3d at 966.

*Ohio Admin. Code § 5120-9-31*

Under Ohio's prison grievance procedures, inmates must file: (1) an informal complaint ("ICR") within fourteen days of the alleged incident; (2) a notification of grievance to the inspector of institutional services ("grievance") within fourteen days of the dismissal of the ICR; and (3) an appeal to the office of chief inspector ("appeal"). Ohio Admin. Code § 5120-9-31(J)(1)-(3). Thus, an inmate will have exhausted all available administrative remedies only when he pursues review at all three levels. *See Rodgers v. Morgan*, 2021 WL 3169154, *2 (S.D. Ohio) (quoting *Blissit v. Fiquris*, 345 F. Supp. 3d 931, 938 (S.D. Ohio 2018)) ("An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the Office of the Chief Inspector."). The PLRA's exhaustion requirement applies to prisoners held in public and private facilities. *De la Cruz v. United States*, 2012 WL 4505997, *4 (N.D. Ohio) (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004)).

6

Defendants submit affidavits from prison staff and other records asserting (1) Plaintiff was never denied use of JPay kiosks to file informal complaints; (2) if the JPay kiosks were to malfunction or otherwise become unavailable, paper copies of informal complaint forms were available in the housing units; (3) Plaintiff was never denied a request for a paper form; (4) Plaintiff filed several informal complaints, grievances, and appeals before and after some of the alleged violations took place; and (5) Plaintiff failed to file an appeal with the Office of the Chief Inspector for all but one of his claims (claim that C.O. Smith confiscated his legal documents on October 12, 2017). *See* Doc. 72-1.

In response, Plaintiff argues he could not follow proper procedures because they were not made available to him while he was in segregation in December 2017. *See* Doc. 36; Doc. 87-1. Plaintiff asserts that while he was in segregation, he was only able to use the JPay kiosk twice. (Doc. 83, at 5). Plaintiff further states "[o]ther than the two times that I was permitted to use the kiosk, when I would ask to use the kiosk to file a grievances, prion [sic] officials would tell me that it was either broke, or that they would come back to get me but they would not come back. When I would ask for a paper grievance, they would say that there were none." *Id*.

However, the mere unavailability of or malfunctioning of JPay kiosks and paper forms does not demonstrate a genuine issue of material fact that Plaintiff was prevented from exhausting his administrative remedies. *Hargrove v. Holley*, 2020 WL 1042620, at *4 (S.D. Ohio), *report and recommendation adopted*, 2020 WL 5651476 (S.D. Ohio) (citing *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001)). Plaintiff must present evidence "that there was no other source for obtaining a grievance form or that he made [another] attempt to obtain a form or to file a grievance without a form." *Jones*, 266 F.3d at 400.

7

Even viewing the facts in a light most favorable to Plaintiff, Defendants have established the absence of a genuine dispute regarding non-exhaustion. *Troche*, 814 F.3d at 798. Per Plaintiff's own declaration, Plaintiff used the kiosk twice while in segregation. (Doc. 87-2, at 5). Plaintiff does not offer any explanation as to why he did not file any informal complaints during either of these times. Additionally, on December 7, 2017, Plaintiff asked permission from Sergeant Jones "to use the Jpay machine to write a grievance" and Jones allowed him to do so. (Doc. 72-2, at 29). Plaintiff was only removed from the kiosk after Jones discovered Plaintiff viewing personal pictures, which, as Jones explained to Plaintiff, was prohibited because of Plaintiff's placement in restrictive housing. (Doc. 87-2, at 4). Based on Plaintiff's own admissions, he was not denied access to the electronic grievance system.

Similarly, Plaintiff's claim that his requests for paper forms went ignored is insufficient to establish that administrative remedies were unavailable to him. Because Plaintiff admits he had access to the JPay kiosks in segregation, he cannot show there was "no other source for obtaining a grievance form[.]" *Jones*, 266 F.3d at 400. Likewise, Plaintiff has not offered any evidence to show he attempted "to file a grievance without a form." *Id*.

Thus, Plaintiff is unable to genuinely dispute Defendants' assertion that Plaintiff failed to exhaust all available administrative remedies. Plaintiff failed to file any form of informal complaint, grievance, or appeal for all but two of his claims for relief. *See* Doc. 36, at ¶¶ 67, 69-80; Doc. 72-1, at 2-3. And while Plaintiff did submit an informal complaint relating to Smith taking his legal documents on October 26, 2017 and escalated the complaint to a grievance, he did not appeal the decision to the Office of the Chief Inspector after his complaint was denied. (Doc. 72-1, at 2). However, Plaintiff fully exhausted his claim regarding Smith taking his legal documents on October 12, 2017. (Doc. 72-1, at 12-14). Because this was the only time Plaintiff

received a decision from the Office of the Chief Inspector, the only claim that has been fully exhausted and able to be brought in this Court is the claim relating to Smith's confiscation of Plaintiff's legal documents on October 12, 2017 (Count II). *Rodgers*, 2021 WL 3169154 at *2; *see also* Doc. 36, ¶ 68. Thus, summary judgment is granted as to all other claims.

*Ohio Rev. Code §§ 2969.26(A), 2969.25(A)*

Defendants also contend Plaintiff's claims should be dismissed due to Plaintiff's failure to comply with Ohio Rev. Code §§ 2969.26(A) and 2969.25(A). (Doc. 72, at 13). In response, Plaintiff argues he is not subject to the requirements of the statutes. (Doc. 87-1, at 27-30).

Ohio Rev. Code §§ 2969.26(A) and 2969.25(A) lay out affidavit requirements that inmates must follow when filing a civil action or appeal against a government entity. Under Ohio Rev. Code § 2969.21:

> (B)(1) "Civil action or appeal against a government entity or employee" means any of the following:
>
> > (a) A civil action that an inmate commences against the state, a political subdivision, or an employee of the state or a political subdivision in a court of common pleas, court of appeals, county court, or municipal court;
> >
> > (b) An appeal of the judgment or order in a civil action of the type described in division (B)(1)(a) of this section that an inmate files in a court of appeals.

Defendants argue that because Plaintiff has not complied with the affidavit requirement, his claims must be dismissed. The Court disagrees. This case is no longer in an Ohio state court. *See* Ohio Rev. Code § 2969.21(B)(1)(a). Additionally, Plaintiff has brought federal claims that have been removed to federal court, making state law defenses inapplicable. *See Armstead v. Baldwin*, 2020 WL 1694850, at *2 (S.D. Ohio) ("Defendants argue that [Plaintiff] has not satisfied the requirements of a particular provision of Ohio law (Section 2969.26(A) of the Ohio Revised Code), but this argument is inapt. [Plaintiff] has brought federal claims in federal court.

Ohio law has no relevance here."). Therefore, summary judgment cannot be granted based on non-compliance with Ohio Rev. Code §§ 2969.26 and 2969.25.

*Count II*

The only remaining fully-exhausted federal claim in Plaintiff's complaint is Count II wherein, Plaintiff alleges "Smith violated [Plaintiff's] First, Sixth, and Fourteenth Amendment rights under the United States Constitution when she retaliated against [Plaintiff], for filing the lawsuit against MTC, by confiscating his legal documents, reading them and not retaining them." (Doc. 36, at 12).[1]

To establish a retaliation claim, Plaintiff must show: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [Plaintiff] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) … the adverse action was motivated at least in part by Plaintiff's protected conduct." *Berkshire v. Dahl*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara* ("*King II*"), 680 F.3d 686, 694 (6th Cir. 2012)).

An inmate has "an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct."). Plaintiff bears the burden of showing "the exercise of the protected right was a substantial or motivating factor in [Defendants'] alleged retaliatory conduct." *Clark v. Stone*, 998 F.3d 287, 303 (6th Cir. 2021) (quoting *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th

---

1. In their Motion for Summary Judgment, Defendants argue Plaintiff's claims of denial of access to the courts and interference with legal material in Count II are without merit. (Doc. 72, at 13). Plaintiff responded by stating he "is not making out a denial to access to court claim as the Defendants strongly suggest." (Doc. 87-1, at 4). Thus, to the extent Count II alleges violations of Plaintiff's Sixth Amendment rights, this claim is dismissed.

Cir. 2001)). If Plaintiff makes such a showing, Defendants have the burden of showing the action would have been taken even absent the protected activity. *Holsapple v. Cunningham*, 817 F. App'x 95, 102 (6th Cir. 2020) (citing *Smith*, 250 F.3d at 1037).

As noted, the only remaining claim relates to Smith's alleged taking of Plaintiff's legal documents on October 12, 2017. On that day, Plaintiff's legal materials were in a laundry bag on his bed when they were taken. (Doc. 71-1, at 30). However, after further grievance investigation, Defendant Shuler informed Plaintiff that while the laundry bag was taken off the end of the bunk, there was no evidence to prove his materials were taken from his cell. (Doc. 72-1, at 13). Shuler further informed Plaintiff "[t]he officer was following the rules in the inmate hand book page 10 requiring that 'jackets and laundry bags can only be hung at the left corner of the bed to prevent blocking staff view.'" *Id*.

Even assuming, *arguendo*, there was evidence that legal materials were taken from his cell, Plaintiff cannot show he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct. *Berkshire*, 928 F.3d at 531. Plaintiff admits the alleged confiscation did not cause him to miss any deadlines or make him unable to file anything in his lawsuits. (Doc. 71-1, at 33).

Further, even if the confiscation is to be considered an adverse action, Defendants have shown the action would have been taken even absent the protected activity. *Holsapple*, 817 F. App'x at 102. As Shuler wrote in the grievance report, "[t]his officer has not violated any rules on the unit, the officer is only enforcing the rules on the unit." (Doc. 72-1, at 13). Plaintiff acknowledged this rule is in place to ensure officers have a clear view of the cell. *See* Doc. 71-1, at 30 ("You can only hang it on one side so the officers can have a clear view inside the cubicle."). Prisons are afforded "wide-ranging deference in the adoption and execution of

11

policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *J.H. v. Williamson Cty.*, 951 F.3d 709, 718 (6th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Therefore, Plaintiff has not created a genuine dispute as to the causal connection between his protected conduct and the alleged adverse action. Summary judgment is therefore granted as to Count II.

*State Law Claims*

Plaintiff's remaining claims are state law claims of negligent hiring, training, and supervision, and false light. (Doc. 36, at 2). The exhaustion requirement of the PLRA does not apply to state law claims. *See Napier v. Laurel Cty.,* 636 F.3d 218, 226 (6th Cir. 2011) ("Therefore, [Plaintiff] failed to exhaust the available administrative remedy. He is still free to pursue his state law claims, but as to the federal claims, we AFFIRM the district court's grant of summary judgment.").

Because all federal claims alleged in this case have been dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See* 13D C. Wright, A. Miller, E. Cooper, & R. Freer, Fed. Prac. & Proc. § 3567.3, (3d ed. 2008) ("Once it has dismissed the claims that invoked original bases of subject matter jurisdiction, all that remains before the federal court are state-law claims . . . . The district court retains discretion to exercise supplemental jurisdiction [over them]"); *see also Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir. 1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims."); *Coleman v. Wirtz*, 745 F. Supp. 434, 441 (N.D. Ohio 1990) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966)) ("Courts have interpreted *Gibbs* … as allowing courts, in their discretion, to dismiss, *sua sponte*, pendent state law claims

12

…"); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits."). As such, Plaintiffs' state law claims (Counts XIII and XIV) are dismissed without prejudice.

In conclusion, Plaintiff has failed to comply with Ohio Admin. Code § 5120-9-31 for all but one federal claim, thus barring the claims under the PLRA. Plaintiff has also failed to raise a genuine dispute regarding the retaliation claim in Count II. Finally, the Court declines supplemental jurisdiction over Plaintiff's state law claims. For these reasons, summary judgment is granted as to all federal claims and Plaintiff's state law claims are dismissed without prejudice.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 72) be, and the same hereby is, GRANTED, and it is

FURTHER ORDERED that Plaintiff's state law claims be, and the same hereby are, DISMISSED WITHOUT PREJUDICE, and it is

FURTHER ORDERED that Plaintiff's Motion for a Telephone Status Conference (Doc. 69) be, and the same hereby is, DENIED AS MOOT; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

                                              s/ *James R. Knepp II*
                                              UNITED STATES DISTRICT JUDGE