IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**AARON E. YOUNG,**

    Plaintiff,

    v.

**DEAN MULVAINE, et al.,**

    Defendants.

CASE NO. 3:18 CV 2807

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Previously in this 42 U.S.C. § 1983 case brought by *pro se* Plaintiff Aaron E. Young, this Court granted Defendants' Motion for Summary Judgment (Doc. 72) and dismissed this case in its entirety. (Doc. 89). On appeal, the Sixth Circuit affirmed this Court's decision in part, vacated it in part, and remanded it for further proceedings. (Doc. 100). Defendants filed a Second Motion for Summary Judgment, which is fully briefed and ripe for decision. (Doc. 104). For the following reasons, the Court grants in part and denies in part the Motion for Summary Judgment.

### BACKGROUND

At all times relevant to this lawsuit, Plaintiff was an inmate at private prison North Central Correctional Complex ("NCCC"), operated by Defendant Management & Training Corporation ("MTC") on behalf of the Ohio Department of Rehabilitation and Correction ("ODRC"). *See* Doc. 36. Plaintiff filed, from May 2016 to September 2017, nineteen internal complaints and grievances against NCCC. (Doc. 72-1, Shuler Affidavit, at 7-8). Additionally, Plaintiff filed two unrelated

civil lawsuits against MTC in 2017. (Young Depo., at 14).[1] Plaintiff claimed he was denied the ability to speak to his attorney for those cases, and that when he was permitted to speak to his attorney, the phone calls were monitored by NCCC staff. *Id.* at 17-18. Plaintiff also stated NCCC staff instructed him to inform his attorney she would not be permitted phone calls or visits to the facility in the future. *Id.* at 19. Plaintiff did not submit a complaint or grievance about the denial of access to counsel, did not miss any court deadlines, was not prevented from making any filings in those cases or others, and continued to correspond with counsel via mail. *Id.* at 23-25; *see also* Doc. 72-1, at ¶ 6. These lawsuits were resolved by mediation or stipulation. (Young Depo., at 15-16, 22).

Plaintiff was internally disciplined several times at NCCC. In February 2017, the Rules Infraction Board ("RIB") disciplined Plaintiff for "telling other inmates not to move during a use-of-force incident." (Doc. 72-2, Craig Affidavit, at ¶ 7). In June 2017, the RIB disciplined Plaintiff for "failing to perform his porter job." *Id.* In November 2017, the RIB disciplined Plaintiff twice for "incidents relating to [Plaintiff] possessing other inmates' legal material." *Id.* In December 2017, the RIB disciplined Plaintiff for "using a JPay machine to view personal pictures." *Id.*

In November 2017, NCCC staff received an anonymous threat to Smith. (Doc. 72-3, Mulvaine Affidavit, at ¶ 4). Defendant Sergeant Dean Mulvaine considered Plaintiff a "possible person of interest" and assigned him to restrictive housing. *Id.* at ¶ 6. Mulvaine stated that during NCCC investigation of the threat letter, Plaintiff stated he "had nothing to do with" the threat, despite not having been advised he was under investigation for the threat, and at least two inmates stated they believed "Plaintiff was the driving force behind the threatening letter." *Id.* at ¶¶ 7-8. Mulvaine also stated the handwriting on the threat letter appeared similar to Plaintiff's. *Id.*

---

1. The transcript of Plaintiff's deposition can be found at ECF No. 71-1.

Mulvaine issued Plaintiff a conduct report charging him with threatening staff with bodily harm. *Id.* at ¶ 9; *see also id.* at 5. The RIB, after a hearing, found Plaintiff guilty of writing the letter. (Doc. 72-2, at 2). This hearing took place on November 30, 2017. (Doc. 81, at 4). As punishment, Plaintiff was given 90 days restrictive housing and a recommendation for review of his security level; his security level was ultimately raised. *Id.* The Ohio Department of Rehabilitation and Correction's Bureau of Classification affirmed the decision and recommendation. (Doc. 72-4, Neil Turner Affidavit, at 2). Plaintiff was put in disciplinary segregation during the investigation, beginning on November 17, 2017. (Young Depo., at 47); (Doc. 72-3, at 1). His 90 days restrictive housing assigned by the RIB began on December 1, 2017. (Doc. 72-2, at 52). Defendant Doyle Prichard served as the Rules Infraction Board Chairperson for Plaintiff's hearing. (Doc. 72-5, Prichard Affidavit, at 1).

After the disciplinary hearing related to the letter, Plaintiff was escorted back to his cell by Mulvaine and Defendant Lieutenant Benjamin Blankenship. (Young Depo., at 47). Plaintiff testified Mulvaine slammed him against the wall, made threatening remarks, used slurs against Plaintiff, and punched Plaintiff in the face. *Id.* at 48-50. Plaintiff told Institutional Inspector Lorri Shuler about the incident but did not file an informal complaint. *Id.* at 50-51. Mulvaine denies he took these actions. (Doc. 72-3, at ¶ 11). Shuler denies Plaintiff told her of the incident. (Doc. 72-1, at ¶ 10).

Plaintiff alleged in his Amended Complaint that Defendant Sergeant Steve Jones and Defendant Sergeant A. Flores wrongly refused to allow him to eat with other inmates, participate in recreation, wash his clothes or cell, or possess a blanket while he was in the restrictive housing unit. (Doc. 36, at 9). Plaintiff cited in support of this contention interrogatory answers by Jones, in which he states Plaintiff's question "is too vague . . . to provide a meaningful response" and states

3

any restrictions imposed "would not have been [Jones'] call." (Doc. 84-16, Jones Interrogatory Responses, at 2).

Plaintiff alleged in his Amended Complaint that Mulvaine and Flores confiscated "his 29 U.S.C. 1746 Declarations." (Doc. 36, at 12). No party provides further details or evidence about this allegation. The parties had previously briefed and provided evidence related to an allegation that Defendant Brandi Smith had confiscated legal materials from Plaintiff (*see* Doc. 72, at 3; Young Depo., at 31-33), but there are currently no claims remaining against Smith. Mulvaine testified in an affidavit he did not confiscate any legal material belonging to Plaintiff. (Doc. 72-3, at 2).

The final incident relevant to the claims currently before the Court relates to Plaintiff's discipline for using the JPay machine to view personal pictures. While Plaintiff's security level was increased after the results of his RIB hearing, he was unable to use the JPay machine to file informal complaints. (Young Depo., at 53-56). On December 7, 2017, Jones granted Plaintiff's request to use the machine. (Doc. 72-2, at 29). When Jones checked on Plaintiff a short time later, Plaintiff was using the machine to look at "personal pictures." *Id.* Plaintiff testified Jones told him he could not view these pictures during his sentence to restrictive housing; Plaintiff told Jones there was no such rule, and Jones called Plaintiff a child molester in front of other inmates. (Young Depo., at 51-52). Plaintiff did not file a complaint about the incident. (Doc. 72-1, at 3).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

This Court granted Defendants' first Motion for Summary Judgment. (Doc. 89). The Sixth Circuit vacated the grant of summary judgment based on the failure to exhaust as to Plaintiff's § 1983 claims that:

> (1) Defendant Mulvaine issued Plaintiff a false conduct report and placed him in segregation;
>
> (2) Defendants Mulvaine and Flores confiscated Plaintiff's legal documents;
>
> (3) Defendants Flores and Jones denied Plaintiff his "limited privilege housing" privileges;
>
> (4) Defendant Mulvaine used excessive force against Plaintiff; and
>
> (5) Defendant Prichard found Plaintiff guilty of violating Rule 8 of the Ohio Administrative Code (for writing threatening notes) and gave Plaintiff a disproportionate sanction for the violation.

(Doc. 99, at 10). The Sixth Circuit held Plaintiff presented a genuine issue of material fact as to whether the prison's grievance process was available to him for these claims. *Id.* at 9-10. When the grievance process is unavailable to an individual, the exhaustion requirement does not apply. *Id.* at 7 (citing *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). The Sixth Circuit additionally vacated the dismissal of Plaintiff's state law claims, over which this Court declined to exercise supplemental jurisdiction. *Id.* at 10.

Defendants have now filed a second Motion for Summary Judgment seeking dismissal of these remanded claims. (Doc. 104). They argue that, grievance process availability aside, "Plaintiff lacks evidence necessary to support his claims, while Plaintiff's own testimony exonerates Defendants from any possible liability." *Id.* at 15.

Section 1983 Claims

Plaintiff brings most of his claims under 42 U.S.C. § 1983, which allows an individual to sue for state violations of his constitutional rights. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 393-94. To bring a successful § 1983 claim, Plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States which was (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). In the claims remanded to this Court, Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights. (Doc. 36, at 12-13).

*First Amendment Claims*

Plaintiff claims (1) Defendant Mulvaine violated his First and Fourteenth Amendment rights by issuing a false conduct report against Plaintiff and placing Plaintiff in segregation (Doc. 36, at 12); (2) Defendants Mulvaine and Flores violated his First and Fourteenth Amendment rights by confiscating Plaintiff's legal documents (*id.*); (3) Defendants Flores and Jones violated his First

6

and Fourteenth Amendment rights by denying Plaintiff "limited privilege housing" privileges (*id.*); (4) Defendant Mulvaine violated his First Amendment rights by assaulting and insulting Plaintiff after his disciplinary hearing (*id.* at 13); and (5) Defendant Prichard violated his First and Fourteenth Amendment rights by finding Plaintiff guilty of violating Rule 8 for writing threatening notes and imposing a disproportionate sanction for that violation (*id.*). Plaintiff alleges all these actions were in retaliation for Plaintiff filing lawsuits and internal complaints against prison staff and helping other inmates file their own lawsuits and complaints. *Id.* at 12-13.

Plaintiff brought these claims specifically as First Amendment retaliation claims. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment[,] not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395). To the extent Plaintiff brings the above claims under the Fourteenth Amendment, they are therefore dismissed; the Court analyzes them under the First Amendment as the "explicit textual source of constitutional protection." *Graham*, 490 U.S. at 395.[2]

To state a First Amendment claim for retaliation, Plaintiff must show (1) he engaged in protected conduct, (2) an adverse action was taken against him "that would deter a person of ordinary firmness from continuing to engage in that conduct," and (3) there is a causal connection

---

2. Plaintiff's opposition to Defendants' Motion for Summary Judgment frequently contradicts itself regarding his Fourteenth Amendment claims; it both states Plaintiff "is not asserting a Fourteenth Amendment Due Process claim" and makes arguments based on the Fourteenth Amendment's equal protection clause. *See* Doc. 106, at 16-18. To make such a claim, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Plaintiff makes no such allegation in his Amended Complaint and points to no such evidence or testimony that this is the case in his opposition brief. Therefore, the Court dismisses any Fourteenth Amendment claims which may remain.

between them; "that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). If Plaintiff can show all three, "the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

*Protected Conduct*

For each of his First Amendment claims, Plaintiff states his protected conduct included (1) his filing of lawsuits and internal complaints and (2) helping other inmates file their own lawsuits and internal complaints. *See* Doc. 36, at 12-13. As to the latter, incarcerated plaintiffs in the Sixth Circuit do not have an independent right to help other prisoners with legal claims; their right to assist another prisoner "is wholly derivative of that prisoner's right to access the courts[, and] prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Thaddeus-X*, 175 F.3d at 395 (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)). Plaintiff can properly state a claim of retaliation on this conduct only if "[his] assistance is necessary to vindicate [another inmate]'s right of access to the courts." *Id.* Plaintiff makes no such allegations and no such argument in his Amended Complaint or in any of his briefing. *See* Docs. 36, 106. Plaintiff therefore does not adequately state any First Amendment retaliation claim related to his assistance with other inmates' internal complaints or lawsuits.

As to Plaintiff's own lawsuits and internal complaints: "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). An inmate cannot, however, "immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x 520,

8

525 (6th Cir. 2002) (citing *Ward v. Dyke*, 58 F.3d 271, 274-75 (6th Cir. 1995)). "This right is protected . . . only if the grievances are not frivolous." *Herron*, 203 F.3d at 415. A complaint is frivolous if it lacks an arguable basis in law or fact – frivolity "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Defendants make no argument Plaintiff's complaints were themselves frivolous, and this Court declines to find them so.

Additionally, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Smith*, 250 F.3d at 1037. In *Smith*, and in *Thaddeus-X*, this legal tenet meant a prisoner "cannot exercise that right [to file grievances against prison officials] in a manner that violates legitimate prison regulations or penological objectives." *Id.*; *see also Thaddeus-X*, 175 F.3d at 395. Defendants argue that because their "alleged retaliatory acts stem from Plaintiff's discipline for violating internal prison rules," this holding prevents Plaintiff from proceeding past the first step of the First Amendment retaliation analysis. (Doc. 104, at 16). This argument addresses the second and third steps, not the first: it concerns the adverse actions taken against Plaintiff and their relation to Plaintiff's conduct, not the conduct Plaintiff alleges was protected. Plaintiff's claims survive the first step of the analysis.

*Adverse Actions*

Plaintiff states the adverse actions taken against him included false conduct reports and false convictions of rules violations, confiscation of his legal documents, denial of certain housing privileges, placement in segregation, assault and insult after a hearing, and generally disproportionate sanctions for rules violations. *See* Doc. 36, at 12-13. In order to state a successful claim, Plaintiff must show these actions "would deter a person of ordinary firmness from continuing to engage in [the protected] conduct," in this case, from filing lawsuits and internal

9

grievances. *Thaddeus-X*, 175 F.3d at 394. Actual deterrence from that conduct, however, need not have occurred. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

Misconduct charges – even legitimate ones – and restriction of privileges can be considered adverse actions which would deter a prisoner from exercising their First Amendment rights. *See, e.g.*, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007); *King v. Zamira*, 150 F. App'x 485, 494 (6th Cir. 2005). Defendants argue Plaintiff does not allege "what privileges he was deprived of, or how the lack of these privileges had an adverse effect on him" (Doc. 104, at 18).

Plaintiff has not provided support for two alleged adverse actions. Plaintiff claims Mulvaine and Flores confiscated his legal materials but offers no evidence it actually happened; Mulvaine denies he confiscated any legal materials belonging to Plaintiff. (Doc. 72-3, at 2). Plaintiff also claims Flores and Jones denied him certain limited-privilege housing privileges but has cited only an interrogatory response in which Jones denies this was in his purview. (Doc. 84-16, at 2). These two claims therefore do not survive the second step of analysis.

There is, however, evidence that Plaintiff was charged with and then found responsible for misconduct in violation of prison rules (Doc. 72-2, at 1-2); that Plaintiff was placed in restrictive housing (Doc. 72-3, at ¶ 6); and that Plaintiff's security level was raised (Doc. 72-2, at 2). Additionally, there remains a question of fact as to whether Plaintiff was, as he alleged, assaulted by Mulvaine after his disciplinary hearing (Plaintiff testified it did happen and that he told Shuler (Young Depo., at 48-50); Mulvaine denied it happened (Doc. 72-3, at ¶ 11); and Shuler denied Plaintiff informed her of the incident (Doc. 72-1, at ¶ 10)). Whether Plaintiff's retaliation claims against Mulvaine and Prichard succeed, therefore, depend upon whether Plaintiff can show the third step of the analysis.

10

*Causal Connection*

Plaintiff must be able to show the adverse actions against him were "motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. Plaintiff does not do so in this case. Temporal proximity alone is not typically sufficient to prove causation unless that proximity is "extremely close"; courts must look to "the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010) (citing two days as an "extremely close" proximity sufficient to show causation). Purely conclusory assumptions of a defendant's motivation are not sufficient to meet the causation element; "[b]are allegations of malice do not suffice to establish a constitutional claim." *McMillan v. Fielding*, 136 F. App'x 818, 820-21 (6th Cir. 2005) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff primarily argues that retaliatory conduct by Defendant Mulvaine occurred 21 days after "his grievance was granted" and twelve days after prison officials had been served in one of his lawsuits against them. *See* Doc. 106, at 8. Plaintiff argues this means "[a]n inference can be drawn that Mulvaine had animus against Young for filing lawsuits and grievances." *Id.* The Court does not agree; the time period alone is not sufficient evidence to support Plaintiff's claim. *Randolph v. Ohio Dept. of Youth Serv.*, 453 F.3d 724, 737 (6th Cir. 2006) ("temporal proximity itself is insufficient to find a causal connection"). And as Defendants point out, Plaintiff had filed 19 internal complaints and grievances in his time at NCCC spanning more than a year. (Doc. 72-1, at 7-8). Because Plaintiff initiated so many complaints over such a lengthy period, any disciplinary action taken by Defendants would necessarily have been near in proximity to at least one complaint.

Plaintiff offers as evidence of retaliatory motive affidavits from two other inmates, who stated that on December 5, 2017, they saw Defendant Mulvaine slam Plaintiff against the wall, yell at Plaintiff for filing lawsuits, and then hit Plaintiff in the face. (Doc. 106-4, Stanley Jackson Affidavit, at 1; Doc. 106-5, Clarence Powell III Affidavit, at 1). This evidence is unavailing. Any claim of Plaintiff's that Defendant Mulvaine violated his rights on December 5, 2017, is not currently before this Court; the only allegations that Mulvaine used physical violence against Plaintiff are from immediately after Plaintiff's hearing on November 30, 2017. This is the only evidence Plaintiff puts forth for the causation element of his claims, and it does not concern any of the claims of retaliation against Mulvaine and Prichard currently pending before this Court.

Finally, even if Plaintiff had shown evidence that would permit an inference of causation, Defendants need only show "that the same action[s] would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). This is where Defendants' earlier argument becomes relevant: that the actions of which Plaintiff complains were the result of Plaintiff's violations of prison rules. (Doc. 104, at 16). "[A] policy of judicial restraint [exists] to accord prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Meadows v. Hopkins*, 713 F.2d 206, 209 (6th Cir. 1983). Though Plaintiff characterizes the discipline against him as false and disproportionate, these allegations are conclusory and without evidence, and the infractions are well-documented by Defendants, particularly that of the threat letter, for which Mulvaine described several sources of evidence for finding Plaintiff responsible. *See* Doc. 72-3, at ¶¶ 6-9.

The Court is concerned with Plaintiff's allegation of Mulvaine's violence against him on November 30, 2017, after the RIB hearing. As described by Plaintiff, it would certainly serve no disciplinary purpose, and there is a question of fact as to whether it occurred, thanks to the conflicting testimony of the parties involved. But the Court is not convinced this was an act of First Amendment retaliation, as it, just as is the case with Plaintiff's other claims, did not take place within extremely close temporal proximity of Plaintiff's exercise of First Amendment rights and Plaintiff sets forth no evidence of causation. The Court therefore finds Defendants are entitled to summary judgment on all First Amendment claims set forth by Plaintiff, but discusses this incident as related to Plaintiff's Eighth Amendment claim below.

*Eighth Amendment Claim*

Plaintiff additionally asserts that by assaulting and insulting Plaintiff after his disciplinary hearing, Mulvaine also violated Plaintiff's Eighth Amendment rights. (Doc. 36, at 13). The Eighth Amendment protects a convicted prisoner's right to be free from excessive force by prison officials. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Plaintiff testified that while escorting Plaintiff back to his cell after the RIB hearing, Mulvaine slammed him against the wall, made threatening remarks, used slurs against Plaintiff, and punched Plaintiff in the face. (Young Depo., at 48-50). Plaintiff also stated he told Defendant Shuler of the incident. *Id.* at 50-51. Mulvaine denied he did this (Doc. 72-3, at ¶ 11) and Shuler denied Plaintiff told her of it. (Doc. 72-1, at ¶ 10). If Plaintiff's testimony is true, this Court cannot envision a scenario in which Mulvaine's actions were "applied in a good-faith effort to maintain

13

or restore discipline," as Defendants present no evidence that Plaintiff had behaved combatively or in any other manner requiring discipline during the trip from the RIB hearing to Plaintiff's cell.

Defendants argue that Plaintiff had no medical record of injury from the incident, that Plaintiff's allegations are "conclusory" and "self-serving", and that "there is no evidence that the alleged use-of-force occurred at all." (Doc. 104, at 24). But deposition testimony, just as the affidavits filed by Defendants, is evidence sufficient to support a factual position in a motion for summary judgment. Fed. R. Civ. P. 56(a)(c)(1)(A). And this Court is not permitted to weigh the evidence regarding a factual matter in dispute. *Anderson*, 477 U.S. at 248-49. Whether or not Mulvaine slammed Plaintiff into a wall and punched him in the face appears to this Court to be a genuine dispute of material fact, and Mulvaine is not entitled to summary judgment on Plaintiff's Eighth Amendment claim.

State Law Claims

This Court initially declined to exercise supplemental jurisdiction over Plaintiff's state law claims of negligent hiring, training, and supervision, and false light. (Doc. 89, at 12). Supplemental jurisdiction is discretionary; a plaintiff does not have a right to it. *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). When a district court dismisses all federal claims in a case, it "should decline to exercise pendent jurisdiction over state law claims." *Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir. 1987). But as this Court has not dismissed Plaintiff's Eighth Amendment claim, it chooses to exercise supplemental jurisdiction in this case for considerations of judicial economy, as Plaintiff's state claims and federal claims are of a similar character. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725-26 (1966).

*Negligent Hiring, Training, and Supervision*

In his Amended Complaint, Plaintiff alleges "MTC is negligent for failing to train, supervise and discipline its employees." (Doc. 36, at 14). Though he offers no specific allegations in support of this claim, it appears it arises from the constitutional violations he alleges in his § 1983 claims. Such a claim arises under the doctrine of *respondeat superior*; under Ohio law, for this doctrine to apply "an employee must be liable for a tort committed in the scope of his employment." *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (1988).

This Court has granted Defendants summary judgment on all claims by Plaintiff except for his Eighth Amendment claim against Defendant Mulvaine. *See supra.* For this reason, this is the only claim of negligent hiring, training, and supervision which survives. Defendants argue that because *respondeat superior* may not serve as a basis for liability under § 1983, all state law *respondeat superior* claims brought by Plaintiff must fail. (Doc. 104, at 27). But Plaintiff does not bring his *respondeat superior* claim under § 1983; he brings it under Ohio tort law. *See* Doc. 36, at 14. Though it appears a negligence claim against a prison or prison official may be possible (*see, e.g.*, *King v. Ross Corr. Inst.*, 2002 WL 31894913, at *5-6 (Ohio Ct. App.); *Howard v. Mgmt. & Training Corp.*, 2019 WL 5549541, at *3), neither party briefed the merits of the negligent hiring, training, and supervision claim itself or any affirmative defenses against it. The Court therefore denies summary judgment on the issue.

*False Light*

Plaintiff alleges that Defendant Jones' false statement in front of other inmates that Plaintiff was a child molester unlawfully invaded Plaintiff's privacy and presented him in a false light. (Doc. 36, at 14). At the outset, Plaintiff's two claims contradict each other here. False light claims allege the defendant made a false statement; in invasion of privacy claims, "it is the very truth of

15

the facts that creates the claimed invasion of privacy." *Stainbrook v. Ohio Sec'y of State*, 88 N.E.3d 1257, 1264-65 (Ohio Ct. App. 2017). Because Plaintiff's Amended Complaint alleges Defendant Jones' statement was false, interpreting the claim as a false light accusation is most accurate.

False light claims in Ohio have a one-year statute of limitations. *See Stainbrook*, 88 N.E.3d at 1265. Plaintiff's original Complaint did not include a false light claim. *See* Doc. 1. It was added in Plaintiff's Amended Complaint on October 9, 2020. (Doc. 36, at 14). Defendant Jones' alleged statement occurred in December 2017, more than two years prior. (Young Depo., at 51-52); ((Doc. 72-2, at 29). Plaintiff did timely plead a defamation claim, which he then removed in favor of the false light claim (*see* Docs. 1, 36); to the extent this series of events could be construed as giving Defendant Jones timely notice of Plaintiff's claim, the Court addresses the issue on the merits as well.

To succeed on a false light claim, Plaintiff must show he was placed in a false light to the public which "would be highly offensive to a reasonable person, and [that] the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 473 (2007). False light claims require more than "'any communication by the defendant to a third person' . . . it requires publicity. Publicity means 'that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Croce v. New York Times Co.*, 345 F. Supp. 3d 961, 994 (S.D. Ohio 2018), *aff'd*, 930 F.3d 787 (6th Cir. 2019) (quoting *Welling*, 113 Ohio St. 3d at 468-69).

Plaintiff stated in his deposition that Defendant Jones called him a child molester "in front of other inmates." (Young Depo., at 51-52). This is not sufficient to make the matter public. False information shared with "several" employees does not make a matter public. *Mitchell v. Fujitec*

16

*America, Inc.*, 518 F. Supp. 3d 1073, 1097 (S.D. Ohio 2021). A letter published to a person's employer (a large state institution) does not make the information in the letter public. *Croce*, 345 F. Supp. 3d at 994. "The information was not publicized in a newspaper, on the internet, in a speech to a large crowd, or in any way that would make it substantially certain to become something of public knowledge. Even though it might be more likely that a larger number of people [learned of the information,] . . . it is still not plausible that the information became public knowledge." *Swartz v. DiCarlo*, 2014 WL 8097138, at *4 (N.D. Ohio 2014). That several other inmates might have heard Defendant Jones' statement does not make the matter public. Defendant is entitled to summary judgment on Plaintiff's false light claim.

Motion for Sur-Reply

The last matter before the Court at this juncture is Plaintiff's Motion to Strike Defendants' Reply on the basis that it raises a new argument (or, in the alternative, to be permitted to file a sur-reply). (Doc. 108). Plaintiff argues that in their reply brief (Doc. 107), Defendants raised for the first time "[c]onfidential statements of two inmates that advised Plaintiff was behind the threats to C.O. Smith" and "[c]omparison of handwriting on the threat with that of Plaintiff's." (Doc. 108, at 2). This is not correct. Defendants included both facts in their Motion for Summary Judgment. (Doc. 104, at 4). Additionally, these facts have been in the record and included in arguments in this case since Defendants' first Motion for Summary Judgment in 2021. *See* Doc. 72. The Court therefore denies Plaintiff's motion.

The Court notes in conclusion that the only remaining claims in this case, after this order, are Plaintiff's Eighth Amendment claim against Defendant Mulvaine and Plaintiff's negligent hiring, training, and supervision claim against MTC based on the same actions underlying the Eighth Amendment claim.

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 104) be, and the same hereby is, GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that Plaintiff's Motion to Strike (Doc. 108), be and the same hereby is, DENIED.

                                         s/ *James R. Knepp II*
                                         UNITED STATES DISTRICT JUDGE

                                         Dated: June 27, 2024